UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                   :
                                            :
v.                                          :      **DECISION & ORDER**
                                            :      08-CR-140 (WFK)
MAXIMILIANO BONILLA OROZCO,                 :      19-CV-6279 (WFK)
                                            :
                 Defendant.                 :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** On December 4, 2008, Maximiliano Bonilla Orozco ("Defendant") pled guilty to Conspiracy to Distribute Cocaine, in violation of 21 U.S.C. § 960(a)(3). ECF No. 3. Defendant was sentenced to a term of imprisonment of twenty years to be followed by a five-year term of supervised release. ECF No. 57. Presently before the Court are (1) Defendant's petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, ECF No. 59 (the "Petition"); (2) Defendant's motion for home confinement pursuant to 18 U.S.C. §3624(c), ECF No. 75; (3) Defendant's July 29, 2020 motion to unseal certain documents, ECF No. 82; (4) Defendant's October 26, 2020 motion to unseal certain documents, ECF No. 90; and (5) Defendant's motion to amend or correct his motion for compassionate release, ECF No. 103. For the following reasons, Defendant's motions are DENIED.

## BACKGROUND

### I.     Defendant's Offense and Conviction

On March 5, 2008, Maximiliano Bonilla Orozco ("Defendant") was indicted by a grand jury sitting in the Eastern District New York based upon information provided by numerous cooperating witnesses and corroborating evidence, including evidence related to drug seizures in Mexico. ECF No. 1. The single-count Indictment charged Defendant with Conspiracy to Distribute Cocaine Internationally, in violation of 21 U.S.C. §§ 963, 959(c), 960(a)(3) and 960(b)(1)(B)(ii) ("the Charge"). *Id.* The Charge pertains to Defendant's role in arranging for large cocaine shipments to be transported from Colombia, through Central America and Mexico, and ultimately, into the United States between January 1, 1990 and February 29, 2008. Presentence Investigation Report ("PSR"), ECF No. 33, ¶ 3.

On December 4, 2008, Defendant pled guilty to the sole count of the Indictment pursuant to a cooperation agreement. ECF No. 3. Defendant was subsequently granted bail and was permitted to return to Colombia to provide "pro-active cooperation under the supervision of agents from the Drug Enforcement Administration ('DEA'), in conjunction with special agents from the United States Department of Homeland Security, Homeland Security Investigations ('HSI')." Def. Mot., ECF No. 75, at 5.

During the summer of 2009, Defendant violated the terms of his bail by failing to cooperate. *Id.* On June 29, 2009, the Honorable Sandra L. Townes issued a warrant for Defendant's arrest. ECF No. 8. Defendant fled to Venezuela where he continued his drug trafficking activities. Def. Mot. at 5.

On November 28, 2011, Defendant was captured in Venezuela, expelled to Columbia, and ultimately, extradited to the United States. *Id.* On January 6, 2012, Defendant appeared before the Honorable Joan M. Azrack, who revoked Defendant's bail. ECF No. 14. On October 19, 2016, Judge Townes sentenced Defendant to a term of imprisonment of twenty years to be followed by a five-year term of supervised release. ECF No. 57.

## II.   Procedural History

On November 5, 2019, Defendant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Petition, ECF No. 59. On March 13, 2020, the Government filed an opposition to Defendant's petition. Gov't Letter in Opp'n to Def.'s Mot. ("Gov't Mot. Opp."), ECF No. 74.

On April 7, 2020, Defendant filed a motion for home confinement pursuant to 18 U.S.C. § 3582. Def. Mot., ECF No. 75. On August 24, 2020, the Government opposed Defendant's motion. Gov't Letter in Opp'n to Def.'s Mot. ("Gov't Mot. Opp."), ECF No. 84. On September

3, 2020, Defendant filed an addendum to his motion for home confinement. Def. Mot. Addendum, ECF No. 85.

On July 29, 2020, Defendant filed an emergency motion to unseal a list of documents and transcripts. ECF No. 82. On October 26, 2020, Defendant filed a second motion to unseal any records and transcripts of Defendant's proceedings, including his sentencing hearing. ECF No. 90. Finally, on July 6, 2021, Defendant filed a motion to amend or correct his motion for compassionate release. Mot. to Amend Mot. for Home Confinement ("Mot. to Amend"), ECF No. 103.

## DISCUSSION

### I. Motion to Vacate

Pursuant to 18 U.S.C. § 2255, a prisoner who is in federal custody may move for the court that imposed the sentence to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Section 2255 provides a mechanism for federal prisoners to vacate sentences imposed in violation of the laws or Constitution of the United States." *Hardy v. United States*, 878 F.2d 94, 96 (2d Cir. 1989).

#### A. Actual Innocence

Defendant sets forth two arguments in support of his motion to vacate his conviction. First, Defendant claims he is "actually innocent" of the Charge to which he pled guilty. Petition at 4, 14. Specifically, Defendant argues Congress did not intend for the charge to which he pled guilty, 21 U.S.C. § 960(a)(3), to apply beyond the territorial jurisdiction of the United States. *Id.*

at 14. Defendant argues further there is no "evidence that proves beyond a reasonable doubt that [Defendant] 'intended to distribute' cocaine 'into the United States of America.'" *Id.* Defendant concludes knowledge was a "crucial element" to convict him under 21 U.S.C. § 960. *Id.* at 15. Defendant's first argument fails on the merits, because he is not innocent of the charge upon which he was convicted.

"Actual innocence is not in [and] of itself a claim for relief; rather, a showing of actual innocence serves as a 'gateway' for a petitioner to argue a procedurally defaulted issue." *Florez v. United States*, 07-CV-4965 (CPS), 2009 WL 2228121, at *7 (E.D.N.Y. July 24, 2009) (Sifton, J.) (citing *House v. Bell*, 547 U.S. 518, 555, (2006)). Actual innocence refers to factual innocence, rather than "mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To satisfy the actual innocence gateway standard, a petitioner must show: "'in light of all the evidence ... it is more likely than not that no reasonable juror would have' found the defendant guilty 'beyond a reasonable doubt.'" *Florez*, 2009 WL 2228121, at *7 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). "Petitioner[s] must make a stronger showing than is required to establish prejudice under an ineffective assistance claim," *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002), such that petitioners' "newly presented evidence may indeed call into question the credibility of [evidence] presented at trial." *Schlup*, 513 U.S. at 330.

Here, Defendant claims the Government failed to demonstrate he possessed cocaine with the intent to distribute it and with knowledge it would be imported into the United States. Petition at 14-18. Specifically, Defendant argues the Government presented not one "phone call, video or e-mail which can witness [Defendant] 'agreed' with one or more person to possess or invest to possess cocaine with the 'intention' or 'knowledge' that cocaine was going to be unlawfully imported in the United States of America." Supplemental Petition at 3. Finally,

4

Defendant claims he was unaware when he pled guilty that extraterritorial jurisdiction was an element of the charge. *Id.* at 9.

However, during Defendant's plea allocution, Defendant was explicitly informed of the charges against him, including the knowledge requirement. *See* Change of Plea Hearing Transcript ("Tr.") at 5, 24-25 ("Again, the one count in the indictment charges that between 1990 and early 2008, [Defendant] and others knowingly and intentionally conspired to or agreed to distribute a controlled substance knowing it would be imported into the United States and that the offense involved five kilograms of cocaine."). During his allocution, Defendant admitted he was aware of a drug shipment from Colombia to Mexico and acknowledged he "made an agreement with these people for the shipment to be sent" with the intention the shipment reached the United States. *Id.* When Defendant was asked if he knew it is illegal to ship the drugs into the United States, Defendant confirmed that he did. Tr. at 25-26 ("Yes, of course; yes.").

Finally, the Court notes Defendant's argument with respect to congressional intent is incorrect. 21 U.S.C. § 959 explicitly provides jurisdiction over violations committed beyond the territorial jurisdiction of the United States. *See* 21 U.S.C. § 959(c) ("This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States."). Defendant's allocution is legally sufficient to establish his guilt. Moreover, Defendant has presented no new evidence in support of his claim. Therefore, Defendant's claim of actual innocence is without merit.

B. <u>Ineffective Assistance of Counsel</u>

Second, Defendant argues he was denied the effective assistance of counsel because his lawyers failed to argue that the charge to which Defendant pled guilty did not provide for extraterritorial conduct. Petition at 17-18. Defendant claims he instructed his counsel to raise

this issue, and that he had been repeatedly advised to sign a plea agreement instead. *Id.* Specifically, Defendant claims his lawyers "failed to pursue a request for an evidentiary hearing, failed to demand an adequate factual basis for conspiracy to distribute cocaine in violation of 21 U.S.C. §960(a)(3), and because [Defendant] acted under a conflict of interest."[1] The Court finds Defendant's ineffective counsel claim also lacks merit.

Claims for ineffective assistance of counsel "may appropriately be raised for the first time in a § 2255 motion, whether or not the petitioner could have raised the claim on direct appeal." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (quotation marks and citations omitted). In *Strickland v. Washington*, the U.S. Supreme Court set forth the relevant law governing claims for ineffective assistance of counsel. 466 U.S. 668 (1984). To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy Strickland's two-part test, which requires demonstrating (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the defense, meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* at 687-88; *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) ("[I]n order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet a two-pronged test: (1) he must show that counsel's performance was deficient, so deficient that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, and (2) he must show that the deficient performance prejudiced the defense, in the sense that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted) (citing *Strickland*, 466 U.S. at 687, 690, 694)). "*Strickland*'s standard, although by no

---

[1] Defendant does not explain the basis for the conflict of interest he alleges.

means insurmountable, is highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). A petitioner bears the burden of proof on both prongs, *id.* at 381, and the court must consider counsel's alleged errors in the aggregate, *see Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

Under the first *Strickland* prong, "[j]udicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation marks and citation omitted). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman*, 477 U.S. at 381. Under the second prong, to show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

A claim for ineffective assistance of counsel "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett*, 663 F.3d at 85 (citations omitted). "[A] court need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697, 104; *see Brown v. Artuz*, 124 F.3d 73, 80 (2d Cir. 1997) (declining to remand to the district court because, even if the petitioner raised an issue on the performance prong, the petitioner failed to establish prejudice under the second *Strickland* prong); *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991) ("[The petitioner] points to several instances in his trial where he asserts his lawyer's performance was objectively unreasonable. We need not address these alleged deficiencies because we conclude that [the petitioner] cannot satisfy the second prejudice prong of *Strickland*, given the overwhelming evidence of guilt adduced at trial.").

Defendant claims his counsel urged him to plead guilty and refused to argue during Defendant's plea and sentencing that the charge did not provide for extraterritorial conduct. However, as previously described, Defendant's theory that the charge upon which he was convicted does not apply to conduct beyond the territorial jurisdiction of the United States is incorrect. Defendant's counsel did not err by refusing to raise this erroneous argument. Furthermore, the Government reports an evidentiary proffer was made at Defendant's plea hearing, informing Defendant and his counsel of the evidence the Government planned to present at trial. Gov't Petition Opp. at 7. Specifically, the Government stated it would present evidence "from six or seven individuals' testimony regarding the defendant's participation in arranging for large loads of cocaine to travel from Colombia through Mexico to the United States" as well as "evidence of seizures of large loads of cocaine in which the defendant was involved...." Tr. at 25. Ultimately, the record before the Court does not permit a finding that the conduct of

8

Defendant's counsel fell below an objective standard of reasonableness. Thus, Defendant's claim of ineffective assistance of counsel fails, as well.

## II. Motion for Home Confinement

Defendant also moves for a reduction of his term of imprisonment under the federal compassionate release statute pursuant to 18 U.S.C. § 3582(c)(1)(A) because of the outbreak of the COVID-19 pandemic. Def. Mot. at 3. Defendant argues the inmates in the facility in which he is incarcerated, Estill Federal Correctional Institution ("FCI Estill"), are unable to practice social distancing and that the Institution is otherwise ill-equipped to prevent the spread of infection. *Id.* at 4-5. Further, Defendant argues he is in particular danger because he suffers from high blood pressure and high cholesterol. *Id.* at 5. If released on home confinement, Defendant claims he can reside at the residence of a family member located in Greenville, South Carolina. *Id.* at 5. Defendant also reports he is under great stress and is concerned about the safety of his family. Mot. to Amend at 11-12.

The Government opposes Defendant's request, arguing the Federal Bureau of Prisons ("BOP") is vested with the sole authority to grant home confinement and Defendant failed to exhaust his administrative remedies before petitioning the Court. Gov't Mot. Opp. at 8. Moreover, the Government argues Defendant is ineligible for home detention because Defendant (1) is a foreign national, (2) failed to provide health information to indicate home confinement is warranted, and (3) failed to provide evidence the location he requested to reside is "safer than his current prison environment. *Id.* at 8-9. Finally, the Government argues Defendant's "history of violence, and disobedience with prior bail restrictions, including committing murder while on bail, makes him a totally unreliable candidate for home confinement." *Id.* at 9.

"[A] court may not modify a term of imprisonment once it has been imposed except

pursuant to statute." *United States v. Roberts*, 18-CR-528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (Furman, J.). The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), "as amended by the First Step Act of 2018 allows courts to reduce a defendant's sentence upon motion of either the Director of the Bureau of Prisons or the defendant." *United States v. Robinson*, 10-CR-789 (NGG), 2022 WL 16924176, at *2 (E.D.N.Y. Nov. 14, 2022) (Garaufis, J.). "[C]ourts may, in their discretion, grant a sentence reduction if, 'after considering the [applicable] factors set forth in [18 U.S.C. §] 3553(a),' the court finds that 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Davis*, No. 21-1136, 2023 WL 2639576, at *1 (2d Cir. Mar. 27, 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Defendants bear the burden of proving the existence of "extraordinary and compelling reasons" justifying their release. *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).

"A court may deny a motion for compassionate release if it determines that a defendant has failed to make the requisite showing regarding extraordinary and compelling reasons *or* that the section-3553(a) factors, on balance, do not warrant a sentence reduction." *Id.* (citing *United States v. Keitt*, 21 F.4th 67, 73 & n.4 (2d Cir. 2021)). Therefore, a court may deny a motion for compassionate release if such a measure comports with the relevant Section 3553(a) factors without first determining "whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *Keitt*, 21 F.4th at 73 (2d Cir. 2021). Indeed, "district courts have broad discretion in evaluating whether a defendant has demonstrated extraordinary and compelling circumstances for release." *See United States v. Alba*, 21-CR-873, 2023 WL 220988, at *2 (2d Cir. Jan. 18, 2023) (citation omitted).

In addition to demonstrating "extraordinary and compelling reasons" warrant the reduction, as a threshold matter, a defendant must also satisfy the exhaustion requirement in

order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i). In the absence of a motion from the BOP, courts cannot grant compassionate release unless the defendant either: (1) "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or (2) waited "30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *United States v. Ogarro*, 18-CR-373-9 (RJS), 2020 WL 1876300, at *5 (S.D.N.Y. Apr. 14, 2020) (Sullivan, J.) (quoting 18 U.S.C. § 3582(c)(1)(A)).

### A. Defendant's Motion is Not Properly Before the Court

First, Defendant has provided no indication that he has complied with the exhaustion requirement. Nor has Defendant urged the Court to overlook his failure to exhaust his administrative remedies. While the Second Circuit has determined "the administrative exhaustion requirement of § 3582(c)(1)(A) [is] a mandatory claim-processing rule rather than a jurisdictional one" such that it can be waived or forfeited by the Government, the Circuit has not definitively ruled on whether courts can waive the requirement. *Robinson*, 2022 WL 16924176, at *3.

Some courts in the Second Circuit have found a waiver of the exhaustion requirement is justified under certain circumstances. *United States v. Scparta*, 567 F. Supp. 3d 416, 426 (S.D.N.Y. 2020) (Nathan, J.) ("[T]he First Step Act's text, history, and structure all counsel in favor of concluding that the statute's exhaustion requirement is amenable to equitable exceptions."). In *Scparta*, for instance, the court waived the requirement on the grounds "waiting for [the defendant] to exhaust his remedies would both be futile and cause him irreparable harm." *Id.* at 426. Other courts have justified their waiver of the exhaustion requirement on the grounds the defendant was at high risk of contracting COVID-19 due to his "advanced age and compromised health." *United States v. Zukerman*, 451 F. Supp. 3d 329, 334

11

(S.D.N.Y. 2020) (Torres, J.).

This Defendant has not asked the Court to waive the administrative exhaustion requirement, nor has he otherwise addressed the requirement. Still, the Court may in the "interest of justice, assesses whether waiver might be appropriate given the facts at bar." *Robinson*, 2022 WL 16924176, at *3. Beyond referencing the general existence of COVID-19, Defendant has not provided the Court with any reason to believe Defendant is in immediate or exceptional danger. In the absence of such a showing, the Court finds it "unlikely that the virus poses a sufficiently serious immediate health risk to [the Defendant] to qualify him for waiver." *Id.* Nevertheless, even if the Court were to waive Defendant's exhaustion requirements, compassionate release is still unwarranted for the reasons set forth below.

B. Defendant Has Not Demonstrated "Extraordinary and Compelling" Reasons for Compassionate Release

Defendant has failed to demonstrate "extraordinary and compelling reasons" exist such that the Court should modify his sentence, which he is statutorily required to do. As courts have explained, "Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence." *United States v. Butler*, 19-CR-834 (PAE), 2020 WL 1689778, at *1 (S.D.N.Y. Apr. 7, 2020) (Engelmayer, J.); *see also United States v. William Bradley*, 19-CR-632, 2023 WL 3004660, at *1 (S.D.N.Y. Apr. 19, 2023) (Daniels, J.) ("Circumstances relating to defendant's medical condition, age, and family circumstances qualify as 'extraordinary and compelling reasons[.]'") (citing United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13, Appl. Note 1 (A)–(C))). Absent a showing such extraordinary circumstances exist—and that the defendant does not pose a "danger to the safety of any other person or to the community"—the Court's hands are tied. *See* U.S.S.G. § 1B1.13(2).

Incarcerated individuals are particularly vulnerable to the spread of COVID-19. *See United States v. Nkanga*, 18-CR-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (Furman, J.) ("The country faces unprecedented challenges from the novel Coronavirus pandemic. Those detained in jails and prisons face particularly grave danger."). Not to mention, the CDC has identified particular groups at a higher risk of severe illness from COVID-19, including people over the age of 65 and those with serious underlying medical conditions, regardless of their age. *See* People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (Mar. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html.

However, health conditions, such high blood pressure, combined with the mere existence of COVID-19 do not necessarily constitute extraordinary and compelling reasons necessitating a defendant's release into home confinement. "Courts in this Circuit have repeatedly held that a Defendant's elevated risk of developing COVID-19 symptoms is insufficient to justify compassionate release." *Bradley*, 2023 WL 3004660, at *2 (denying compassionate release to a 61 year-old defendant with type two diabetes, high blood pressure, enlarged prostate, sleep apnea, obesity, nerve damage, urinary tract disorders, kidney damage, Bell's Palsy, kidney pain and dysfunction, and vision loss); *see also United States v. Skyers*, 16-CR-377 (MKB), 2021 WL 2333556, at *3 (E.D.N.Y. June 7, 2021) (Brodie, J.) (denying compassionate release to a defendant with asthma, obesity, and high blood pressure because COVID-19 was "under control" in the facility in which the defendant was incarcerated and emphasizing "a generalized fear of contracting COVID-19 does not constitute extraordinary and compelling circumstances warranting release.").

While the Court continues to take seriously the threat posed by the pandemic to

13

incarcerated individuals and the heightened risk of health complications of at-risk groups within prisons, the Court also notes "the threat from COVID-19 has diminished nationwide and within the BOP" since Defendant filed the instant motion. *United States v. Roman*, 19-CR-116 (KMW), 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022) (Wood, J.). Furthermore, while the pandemic remains a serious concern, the BOP has made strides toward the protection of incarcerated individuals. For example, the BOP now offers COVID-19 vaccines to all incarcerated individuals, which provide "some protection from contracting, spreading, or becoming seriously ill from COVID-19." *Id.* (citing COVID-19, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 5, 2023, 12:30 PM)). Defendant reported that he received the vaccine in 2021. Mot. to Amend at 30.

Defendant reports that he suffers from multiple medical issues which he argues place him at higher risk, including high blood pressure and high cholesterol. Def. Mot. at 5. Defendant also reports he was a heavy smoker for thirty years. Mot. to Amend at 13. While the Court acknowledges the seriousness of Defendant's medical issues and is familiar with the difficulties of self-isolating while incarcerated, at the age of 50, Defendant is more than a decade short of the "high risk" metric cited by the CDC. Furthermore, the safety measures BOP has taken and the availability of vaccinations to incarcerated individuals have sufficiently mitigated the risk of exposure to and health complications caused by COVID-19.

Moreover, given the violent nature of Defendant's offenses, the Court has serious concerns about the risk Defendant poses to the public. Defendant was a leader and longstanding member of a notorious, Colombian drug trafficking operation. Gov. Mot. Mem. at 1. Defendant's extensive criminal history includes assassinations, kidnappings, extortion, torture, and trafficking "thousands of tons" of cocaine into the United States. *Id.* at 1-2.

14

In support of his motion, Defendant reports on his activities during his time at FCI Estill. Def. Mem. at 6-8. Defendant successfully completed a variety of programs and classes, participated in events and support groups, completed numerous self-study workbooks, and successfully achieved his GED in social studies. *Id.* In addition, Defendant has not been subjected to any disciplinary action during his incarceration. *Id.* at 8. The Court recognizes Defendant's rehabilitative efforts and lack of disciplinary infractions and commends him for it. However, "maintaining good conduct in prison" is insufficient to constitute extraordinary or compelling reasons justifying his release. *United States v. Frazier*, 17-CR-364-7 (CS), 2023 WL 2139520, at *1 (S.D.N.Y. Feb. 21, 2023) (Seibel, J.) ("[M]aintaining good conduct in prison is not uncommon, and indeed is expected."). Ultimately, even with Defendant's rehabilitative efforts and pre-existing conditions, coupled with the existence of COVID-19, Defendant has failed to show there are "extraordinary and compelling" reasons for his release.

C. The Section 3553(a) Factors Weigh Against Release

Even if Defendant's health and rehabilitative efforts were extraordinary and compelling, the 18 U.S.C. § 3553(a) factors counsel against Defendant's early release. In the late 1990s, Defendant became involved in narcotics trafficking in Medellin, Columbia. PSR ¶ 3. Specifically, Defendant invested in and assembled "multi-thousand kilogram loads of cocaine" to be transported and distributed. *Id.* Defendant supplied cocaine for Los Zetas, a violent crime syndicate in Mexico, and was paid millions for arranging a drug shipment from Colombia to Mexico. *Id.* ¶¶ 4-5. La Oficina de Envigado ("La Oficina"), the organization in which Defendant was a leader, is one of the "largest and most violent drug trafficking organizations" in the world. Def. Mem. at 1. La Oficina inherited control of the drug trafficking infrastructure of Pablo Escobar and is notorious for its illegal activities, which include enforcement and debt-

collection, and for-hire assassinations. *Id.* This organization is unquestionably—indeed, notoriously—dangerous. On top of this, Defendant has also demonstrated he is a poor candidate for home confinement through his past dealings with this District. In December 2008, Defendant pled guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. § 960(a)(3). PSR ¶ 6. After Defendant was released on a personal recognizance bond, Defendant fled the jurisdiction. *Id.* Defendant was ultimately arrested in Venezuela in 2011, before being extradited to the United States. *Id.* Defendant was sentenced to a term of twenty years of incarceration to be followed by five years of supervised release. ECF No. 57. To date, Defendant has served seven years of his sentence. Altering Defendant's sentence as he requests would fail to satisfy the purposes of sentencing—here, the seriousness of the offense, the defendant's role, and the need for specific and general deterrence.

The Court recognizes Defendant has demonstrated signs of reform during his time in prison. Nevertheless, the Court remains unconvinced Defendant is either sufficiently reformed or is no longer a danger to the public. Furthermore, given Defendant's previous flight, the Court remains unconvinced of the efficacy of Defendant's proposed living situation if granted the relief he requests.

In sum, the Court finds the § 3553(a) considerations weigh heavily against compassionate release and concurs with the Government: Defendant is an inappropriate candidate for release considering his history and the nature of his criminal conduct. *See United States v. Santos*, 17-CR-388 (KMW), 2023 WL 34822, at *2 (S.D.N.Y. Jan. 4, 2023) (Wood, J.) (declining to grant compassionate release to a "recidivist" defendant who had managed a drug trafficking organization, and who had received numerous sanctions while in prison); *United States v. Tisdale*, 15-CR-334 (RA), 2022 WL 16951307, at *3 (S.D.N.Y. Nov. 15, 2022) (Abrams, J.)

16

(finding the § 3553(a) factors weighed against granting the motion for compassionate release of a defendant who ran a drug-trafficking organization); *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020) (Pauley, J.) (finding the § 3553(a) factors weighed heavily against granting the application of a defendant who ran "the largest tax-shelter fraud scheme in American history," for which "the applicable Guidelines range was life in prison based on the offense level.").

While the Court acknowledges the health risks posed by COVID-19 and commends Defendant for the efforts he has made toward rehabilitation thus far, the section 3553(a) sentencing factors on balance do not favor a sentence reduction, given Defendant's prior criminal history and the seriousness of the present offense. *See Davis*, 2023 WL 2639576, at *2. Accordingly, Defendant's motion for home confinement is hereby DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's habeas petition, ECF No. 59, is DISMISSED in its entirety. Defendant's motion for home confinement pursuant to the First Step Act and 18 U.S.C. § 3582(c), ECF No. 75, is DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 82, 90, and 103 as MOOT; to mail a copy of this Order to Defendant; and to close the case.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 5, 2023
       Brooklyn, New York